# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

TATTOO JOHNNY, INC.,                        :

          Plaintiff,               :       Docket No.: 08-cv-5572 LP

                      :

    v.                                     :

                      :

CHRISTIAN AUDIGIER, INC., SHOP ON           :
STAGE, INC., CHRISTIAN AUDIGIER, TY         :
BOWERS, MACY'S, INC.,                       :
BLOOMINGDALE'S, INC., NORDSTROM,            :
INC., VANGUARD APPAREL LIMITED,
JOHN DOES 1-100, inclusive,

          Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OF LAW OF DEFENDANTS, CHRISTIAN AUDIGIER, INC., SHOP
ON STAGE, INC. AND CHRISTIAN AUDIGIER, IN OPPOSITION TO THE MOTION
OF PLAINTIFF, TATTOO JOHNNY, INC., FOR A PRELIMINARY INJUNCTION AND
EXPEDITED DISCOVERY**

Richard LaCava (RL 1671)
Brian D. Siff (BS 6135)
DICKSTEIN SHAPIRO LLP
1177 Avenue of the Americas
New York, New York 10036
(212) 277-6500

Attorneys for Defendants
Christian Audigier, Inc., Shop on Stage, Inc., and Christian Audigier

# TABLE OF CONTENTS

I.     PRELIMINARY STATEMENT ...................................................................1

II.    LEGAL ARGUMENT.............................................................................4

    A.     This Court Lacks Jurisdiction Over Plaintiff's Claims Because They Are Subject To A Binding Arbitration Provision ...................................................4

    B.     Plaintiff Grant of an Exclusive License Divests it of Standing...................…....6

    C.     Plaintiff's Motion for a Preliminary Injunction Should Be Denied........................7

        1.     A Preliminary Injunction Is An Extraordinary And Drastic Remedy That Should Not Be Routinely Granted .................................................7

        2.     The Standard For Granting Preliminary Injunctions ..................................8

        3.     Plaintiff Cannot Show A Clear, Substantial Or Even A Mere Likelihood Of Success On The Merits .................................................................8

            a.     There Are Serious Questions As To Whether Plaintiff Even Owns The Copyrights At Issue ......................................................... 9

            b.     Plaintiff's Designs Are Derivative Works, Based Upon Images Prevalent In The Tattoo Industry, And Lack The Requisite Originality Necessary To Support A Valid Copyright ................. 10

            c.     Even If Plaintiff's Copyrights Were Valid, Which They Are Not, Defendants' Designs Do Not Infringe Those Rights .................... 13

                i.     The Eagle Designs ............................................. 15

                ii.     The Knife & Rose Designs.................................. 16

                iii.     The Skull Designs................................................ 16

        4.     Plaintiff Fails To Show Any Irreparable Injury.........................................16

        5.     The Balance of The Hardships Weighs Heavily in Defendants' Favor.....18

        6.     If The Court Is Inclined To Grant Plaintiff's Motion, Plaintiff Must First Post Adequate Security Before The Injunction Is Issued .........................19

III.   CONCLUSION.................................................................................20

# TABLE OF AUTHORITIES

Page

Cases

*Alfano v. BDO Seidman, LLP*, 393 N.J.Super. 560 (2007)................................................5

*Aliotti v. R. Dakin & Co.*, 831 F.2d 898 (9th Cir. 1987).................................................11

*Althin CD Med., Inc. v. West Suburban Kidney Ctr.*, 874 F. Supp. 837 (N.D. Ill. 1994)...............6

*Amoco Prod. Co. v. Village of Gambell, Alaska*, 480 U.S. 531 (1987)....................................8

*Barcon Assoc., Inc. v. Tri-County Asphalt Corp.*, 86 N.J. 179 (1980) ..................................5

*Chamberlin v. Uris Sales Corp.*, 150 F.2d 512 (2d Cir. 1945)..........................................11

*Davis v. Blige*, 505 F.3d 90 (2d Cir. 2007) ...........................................................6

*Durham Indus., Inc. v. Tony Corp.*, 630 F.2d 905 (2nd Cir. 1980) ..........................9, 11, 13, 14

*Essex Music, Inc. v. ABKCO Music & Records, Inc.*, 743 F. Supp. 237 (S.D.N.Y. 1990).............6

*Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112 (2d Cir. 2005) ......................................16

*Goldblatt v. Englander Comms., LLC*, 431 F.Supp.2d 420 (S.D.N.Y. 2006) ................................7

*Goldstein v. California*, 412 U.S. 546 (1964)........................................................11

*Greater Iowa Corp. v. McLendon*, 378 F.2d 783 (8th Cir. 1967).........................................7

*Herbert Rosenthal Jewelry Corp. v. Honora Jewelry Co.*, 509 F.2d 64 (2d Cir. 1974)...............14

*Herbert Rosenthal Jewelry Corp. v. Kalpakian*, 446 F.2d 738 (9th Cir. 1971)...........................14

*Hoechst Diafoil Co. v. Nan Ya Plastics, Corp.*, 174 F.3d 411 (4th Cir. 1999)...........................20

*Ideal Toy Corp. v. Fab-Lu Ltd. (Inc.)*, 360 F.2d 1021 (2d Cir. 1966) ..................................14

*Intel Corp. v. ULSI Sys. Tech., Inc.*, 995 F.2d 1566 (Fed. Cir. 1993).................................7

*Interlink Int'l. Fin. Servs., Inc. v. Block*, 145 F.Supp.2d 312 (S.D.N.Y. 2001)..........................20

*Kamakazi Music Corp. v. Robbins Music Corp.*, 684 F.2d 228 (2d Cir. 1982)..............................5

*L. Batlin & Son, Inc. v. Snyder*, 536 F.2d 486 (2d Cir. 1976) ........................................11

*Laureyssens v. Idea Group, Inc.*, 964 F.2d 131 (2d Cir. 1992) ......................................8

*Lorber Indus. of Cal. v. Los Angeles Printworkers, Corp.*, 803 F.2d 523 (9th Cir.1986)..............6

*Martindale v. Sandvik, Inc.*, 173 N.J. 76 (2002) .......................................................5

*Mazurek v. Armstrong*, 520 U.S. 968 (1997).............................................................7

*Mead v. Johnson & Co. v. Abbott Laboratories*, 201 F.3d 883 (7th Cir. 2000) ...........................20

*Motorola Credit Corp. v. Uzan*, 388 F.3d 39 (2d Cir. 2004).............................................5

*Packeteer, Inc. v. Valencia Sys., Inc.*, 2007 WL 707501 (N.D. Cal 2007)................................5

*Random House v. Rosetta Books, LLC*, 283 F.3d 490 (2d Cir. 2002) ............................18

*Reyher v. Children's Television Workshop*, 533 F.2d 87 (2d Cir. 1976)..............................14

*Russ Berrie & Co. v. Jerry Elsner Co.*, 482 F.Supp. 980 (S.D.N.Y. 1980)..............................15

*Satava v. Lowry*, 323 F.3d 805 (9th Cir. 2003)...........................................11, 12

*Sphere Drake Ins. Ltd. v. Clarendon Nat'l Ins. Co.*, 263 F.3d 26 (2d Cir.2001) ...........................5

*Tom Doherty Assoc., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27 (2d Cir. 1995) .................................8

*Uneeda Doll Co. v. P & M Doll Co.*, 353 F.2d 788 (2d Cir. 1965)....................................15

*Video Trip Corp. v. Lightning Video, Inc.*, 866 F.2d 50 (2d Cir. 1989) .........................................18

*Wainwright Sec. v. Wall Street Transcript Corp.*, 558 F.2d 91 (2d Cir. 1977) ...........................17

*Weinberger v. Romero-Barcelo*, 456 U.S. 305 (1982) ................................................8

<u>Statutes</u>

17 U.S.C. § 101................................................................................................10

17 U.S.C. § 501(b) ...........................................................................................6

<u>Rules</u>

iii

Fed. R. Civ. Proc. 65(c) ...................................................................................................19


<u>Other Authorities</u>

Nimmer on Copyright § 12.02[B], n. 20 (2008) ..............................................................6

Restatement (2d) of Conflicts of Laws § 218 (1971) ......................................................5

Defendants Christian Audigier, Inc. ("CAI"), Shop on Stage, Inc. ("SOS") and Christian Audigier ("Audigier") (collectively, "Defendants") respectfully submit this Memorandum of Law, together with the Declarations of Henry R. Mandell ("Mandell Decl."), Ty Bowers ("Bowers Decl."), and Richard LaCava ("LaCava") and the exhibits annexed thereto, in opposition to plaintiff Tattoo Johnny's ("Plaintiff") Motion for a Preliminary Injunction and Expedited Discovery[1] (the "Motion"):

## I.    PRELIMINARY STATEMENT

Plaintiff seeks an injunction that, if granted, will abolish the status quo, severely disrupt Defendants' business operations by shutting down production of some of Defendants' most popular garments, irreparably injure Defendants' relationships with distributors and cost Defendants millions of dollars in lost profits as well as immeasurable damages for the loss of Defendants' good will. (Mandell Decl., ¶¶ 5, 6.) The harm that will result to Defendants if such an injunction issues is precisely the type of harm that has led courts to adopt a very stringent standard for granting preliminary injunctive relief—a standard that permits issuance thereof sparingly and only under the most compelling circumstances. Plaintiff's Motion, which is flawed on numerous levels, fails to meet this standard.

The substance of Plaintiff's Motion aside, this Court lacks jurisdiction to grant Plaintiff's requested relief. Specifically, the very same "Terms and Conditions" to which Plaintiff refers (but conspicuously fails to attach) on numerous occasions in its Complaint (Complaint, ¶¶ 18 and 21) and Motion (Motion, pp. 8, 9, and 11) contains a "Governing Law and Venue" provision that could not be more clear in its terms or mandatory. The provision explicitly states that, "**any and all disputes arising from the use of [Plaintiff's] website, or the ordering of any materials from this website, shall be settled by binding arbitration.**" (LaCava Decl., ¶ 8, Ex. E.) Plaintiff's Complaint alleges that: (1) "Before consummating any transaction on the Website, a

---

[1] The issue as to expedited discovery has already been determined and, thus, is not addressed in this Opposition. Its reference is merely to maintain consistency in the title of the papers.

customer must agree to the Terms and Conditions found on the Website ...”; (2) “Bowers downloaded eight (8) separate designs from the Website ...”; (3) Plaintiff “sent Bowers an e-mail ... informing Bowers that the use of the designs were subject to the Terms and Conditions [Bowers] agreed to prior to downloading the designs ...”; and (4) “several of the designs downloaded by Bowers appeared on several T-shirts offered for sale at the CAI website.” (Complaint, ¶¶ 18, 20, 21 & 24.)  Based on Plaintiff’s allegations, there is no doubt that this is a dispute arising from Defendants’ use of, and ordering of materials from, Plaintiff’s website and, as a consequence, Plaintiff is bound by its arbitration provision.  Accordingly, Plaintiff’s case is improperly pending in this Court and Plaintiff’s Motion, likewise, fails because this Court lacks jurisdiction.

Not only is Plaintiff bound by its own arbitration provision, but Plaintiff has extinguished its right to sue Defendants through the grant of an exclusive license to a third party.  While Plaintiff has produced an extremely redacted version of a license agreement, a simple review of the redacted version of the license agreement shows that the exact nature of the license is unclear.  (See LaCava Decl., Ex. G.)  Without the ability to evaluate the entire license agreement, it is unclear as to whether Plaintiff has conveyed an exclusive license, which extinguishes its right to sue, or has transferred something less than an exclusive license.  Accordingly, Plaintiff’s Motion should be denied on this basis alone.

Even if this Court had jurisdiction over Plaintiff’s claims, Plaintiff cannot satisfy any of the criteria necessary to obtain injunctive relief.  Plaintiff fails to establish any likelihood of success on the merits, let alone a clear or substantial likelihood of success.  Based on Plaintiff’s deposition testimony, there exist serious questions as to whether Plaintiff even owns the copyrights in the designs at issue.  For example, Plaintiff acknowledged, but could not offer any valid explanation for, the fact that Damien Friesz, the creator of Plaintiff’s Knife and Rose and Skull Rose on Top designs, currently offers the same designs for sale on at least two different websites (unaffiliated with Plaintiff) with Mr. Friesz’s, not Plaintiff’s, copyright symbol affixed

2

to the designs. (Bollt Depo., 102:17-107:19, attached to LaCava Decl., Ex. D., hereinafter "Bollt Depo.") Further, Plaintiff did not know whether any of the designs at issue were first published by their respective artists prior to being submitted to Plaintiff and undertook no efforts to determine whether those designs were original creations by the artists, or copies or derivatives of other works.[2] (Bollt Depo. 76:2-22, 44:7-19, 45:8-46:10, 67:8-69:9, 69:13-19.) Most troubling is the fact that Plaintiff's copyright registration certificates falsely designate Plaintiff as the original author of each of the designs at issue and describe the designs as works made for hire when, indeed, the designs do not qualify as works made for hire and Plaintiff is not their original author. (Bollt Decl., Ex. H.)

Even if Plaintiff can demonstrate that it is the proper owner of the copyrights to the subject designs, the designs are not protected by the Federal Copyright Act. The designs of Plaintiff at issue [i.e. an eagle, a knife piercing through a rose, a skull] are nothing more than trivial variations to, and combinations of, a variety of elements and images that are ordinary and widespread in the tattoo industry. (LaCava Decl., ¶ 3, Ex. A, Bowers Decl. ¶¶ 2, 3 & 4, Exs. B, D & E.) For example, Plaintiff's "copyrighted" eagle design bears remarkable similarity to Harley Davidson's famous eagle emblem, with only minor variations. (Bowers Decl., ¶ 2, Ex. B.) Not only are Plaintiff's designs part of the public domain, but they also encompass elements of nature to which no Artist can claim as creator. As such, Plaintiff's designs lack the requisite originality for copyright protection.

Regardless of the validity or invalidity of Plaintiff's copyrights in the designs, Plaintiff's Motion cannot prevail because Plaintiff cannot establish copying by Defendants. Although Defendants do not dispute that Bowers had access to Plaintiff's designs, Defendants' designs were independently created based on a plethora of unprotected ideas from numerous works in the public domain, as well as Bowers' own, independent visions. (Bowers Decl. ¶¶ 2, 3 & 4, Ex. B,

---

[2] Plaintiff does acknowledge that certainly its artists are not the first to design an eagle, a skull with roses on its head, or a knife piercing through a rosebud. (Bollt Depo., 107:25-109:13.)

3

D & E.)  Moreover, the protected elements, if any, in Plaintiff's designs are not substantially similar to Defendants' designs.  (See LaCava Decl., Ex. A & B.)  The differences between the few protectable elements of the designs, if any such protection exists, precludes a finding of infringement.

Plaintiff's Motion also fails because Plaintiff does not offer, or even attempt to offer, any evidence of irreparable injury or hardship.  Rather, Plaintiff erroneously concludes that it is likely to succeed on the merits and, therefore, the Court need not address the irreparable harm and balance of the hardships elements.  Notwithstanding Plaintiff's assumption as to the merits of its claims, Plaintiff may not be relieved of its obligation to justify the need for such drastic relief.  Given that Plaintiff and Defendants do not compete in the apparel industry (although Plaintiff mentions the existence of a supposed T-shirt license without introducing evidence of such), the Court will be hard pressed to ascertain why Plaintiff could not adequately recover from Defendants after a trial on the merits should Plaintiff overcome its jurisdictional obstacles and ultimately prevail on its claims.

## II.    LEGAL ARGUMENT

### A.    This Court Lacks Jurisdiction Over Plaintiff's Claims Because They Are Subject To A Binding Arbitration Provision

Before addressing the merits, Plaintiff's Motion fails on its face.  By Plaintiff's own Terms and Conditions this Court lacks jurisdiction over this dispute.  Specifically, the Terms and Conditions to which Plaintiff refers repeatedly in its Complaint and Motion (but, curiously, are not attached to any of the myriad papers filed by Plaintiff with this Court) contain a "Governing Law and Venue" clause which unequivocally states that, "**[a]ny and all disputes arising from the use of this website, or the ordering of materials form this website, shall be settled by binding arbitration.**"  (LaCava Decl., ¶ 8, Ex. E.) (Emphasis added.)  Nowhere in this provision does Plaintiff reserve or otherwise carve out any right to adjudicate its intellectual property claims in federal court.

4

Generally, a choice-of-law clause in a contract will determine which laws govern the validity of an agreement to arbitrate. *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 50 (2d Cir. 2004); *Sphere Drake Ins. Ltd. v. Clarendon Nat'l Ins. Co.,* 263 F.3d 26, 32 n. 3 (2d Cir.2001); Restatement (2d) of Conflicts of Laws § 218 (1971). Here, the same provision of Plaintiff's Terms and Conditions states that the agreement shall be "interpreted, construed and governed" by the laws of the state of New Jersey. As such, New Jersey law dictates the scope and applicability of Plaintiff's arbitration clause.

Pursuant to New Jersey law, broadly worded arbitration clauses, such as Plaintiff's provision, are construed to encompass both tort and contract claims. *Alfano v. BDO Seidman, LLP*, 393 N.J.Super. 560, 575-77 (2007). Courts have repeatedly recognized the state's affirmative policy favoring arbitration as a mechanism to resolve disputes. *Id.*, *Martindale v. Sandvik, Inc.,* 173 N.J. 76, 92 (2002); *Barcon Assoc., Inc. v. Tri-County Asphalt Corp.*, 86 N.J. 179, 186 (1980). Broad arbitration provisions are interpreted in the context of the strong judicial presumption favoring arbitration, so that doubts concerning the scope of arbitrable issues must be resolved in favor of arbitration, over litigation. *Id.*

Here, Defendants anticipate that Plaintiff may attempt to argue that the arbitration clause is irrelevant because the exclusive jurisdiction of federal courts over claims arising under the Copyright Act makes such claims unsuitable and inappropriate for arbitration. Query whether Plaintiff should be precluded from asserting such an argument in its Reply, as it indisputably had the Terms and Conditions in its possession and chose not to attach or address the jurisdictional issue up front in its moving papers. In any event, Federal Courts, including the Court of Appeals for the Second Circuit, hold that copyright claims are suitable for arbitration. *Kamakazi Music Corp. v. Robbins Music Corp.,* 684 F.2d 228, 231 (2d Cir. 1982) ("[W]e see no public policy against arbitration of this claim for the infringement of a valid copyright."); *Packeteer, Inc. v. Valencia Sys., Inc.*, slip copy, 2007 WL 707501, *3 (N.D.Cal. 2007) ("The Ninth Circuit has

assumed that copyright validity is arbitrable."), *Lorber Indus. of Cal. v. Los Angeles Printworkers, Corp.,* 803 F.2d 523, 525 (9th Cir.1986).

Plaintiff's claims unequivocally relate to Defendants' "use of," and "ordering materials from," Plaintiff's website.  Plaintiff goes to great lengths in its Complaint and Motion to inform this Court [albeit selectively] of the Terms and Conditions that govern the scope of permissible use of Plaintiff's designs and that Bowers was required to agree to such terms in connection with his purchase of the designs.  Accordingly, Plaintiff is bound by the arbitration provision that it drafted, and this Court lacks jurisdiction over Plaintiff's Motion as well as this litigation.

**B.      Plaintiff Grant of an Exclusive License Divests it of Standing**

Not only is Plaintiff bound by its own arbitration provision, but Plaintiff has extinguished its right to sue Defendants through the grant of an exclusive license to a third party.  Under 17 U.S.C. § 501(b), "[t]he legal or beneficial owner of an exclusive right under a copyright is entitled, subject to the requirements of section 411, to institute an action for any infringement of that particular right committed while he or she is the owner of it."  The exclusive licensee may even sue the licensor for infringement if the licensor infringes on the exclusive right it granted to the licensee.  *Davis v. Blige*, 505 F.3d 90, 101 (2d Cir. 2007).  "An exclusive license thus destroys the value of a copyright to the copyright owners, to the extent that the licensed rights cannot be used or exploited by the copyright owners." *Id.*

"Once the copyright owners grants an exclusive license of particular rights, only the exclusive licensee, *and not his grantor*, may sue for later occurring infringements of such rights."  Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 12.02[B], n. 20 (2008) (emphasis added).  *See also Essex Music, Inc. v. ABKCO Music & Records, Inc.*, 743 F. Supp. 237, 242 (S.D.N.Y. 1990) (quoting *Nimmer on Copyright*).  Whether the licensee has been granted an exclusive license, and therefore whether the licensor has transferred the right to sue for infringement, is governed by the terms of the license.  *See Althin CD Med., Inc. v. West Suburban Kidney Ctr.*, 874 F. Supp. 837, 842 (N.D. Ill. 1994).

At a recent deposition of David Bollt, Plaintiff's principal, Mr. Bollt acknowledged that Plaintiff has entered into an exclusive license agreement with a t-shirt manufacturer, but could not recall any details of that agreement. (Bollt Depo. 79:3-80:10). Defendant's counsel then asked for a copy of that license agreement. (Bollt Depo. 80:11-12). Plaintiff's counsel originally agreed to produce the license agreement, and then at the 11th hour, refused to provide a complete copy and produced only a version that was gutted by redactions. (See LaCava Decl., ¶9, Exs. F and G).

A simple review of the redacted version of the license agreement shows that the exact nature of the license is unclear. Specifically, while the license agreement purports to be an exclusive license, all of the terms concerning the "grant" have been redacted. (See *Id.*) In addition, while a right to enforce apparently has been granted to BeeZee Tees, a right of first refusal appears to have been reserved by Plaintiff. (See *Id.*) Without the ability to evaluate the entire license agreement, it is unclear as to whether Plaintiff has conveyed an exclusive license, which extinguishes its right to sue, or has transferred something less than an exclusive license. Accordingly, the exact terms of the license agreement are and remain unclear without the ability to evaluate all of the terms contained therein, and Plaintiff's Motion should be denied on this basis alone.

**C.      Plaintiff's Motion for a Preliminary Injunction Should Be Denied**

**1.      A Preliminary Injunction Is An Extraordinary And Drastic Remedy That Should Not Be Routinely Granted**

A preliminary injunction is an extraordinary and drastic remedy that should not be granted unless the movant, by a clear showing, carries the burden of persuasion. *Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997); *Goldblatt v. Englander Comms., LLC,* 431 F.Supp.2d 420, 424 (S.D.N.Y. 2006). Because preliminary injunctions are deemed an extraordinary legal remedy, they are granted sparingly and under strict rules for the protection of all parties. *Greater Iowa Corp. v. McLendon,* 378 F.2d 783, 799 (8th Cir. 1967). They are "not to be routinely granted." *Intel Corp. v. ULSI Sys. Tech., Inc.,* 995 F.2d 1566, 1568 (Fed. Cir. 1993).

## 2.    The Standard For Granting Preliminary Injunctions

The basis for injunctive relief in the federal courts has always been irreparable injury and inadequacy of legal remedies. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982). An injunction never issues as a matter of course: "In each case, a court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Amoco Prod. Co. v. Village of Gambell, Alaska*, 480 U.S. 531, 542 (1987). In determining whether a preliminary injunction should issue, the Second Circuit requires the movant to show: (1) that it will suffer irreparable injury in absence of an injunction and (2) either (a) a likelihood of success on the merits *or* (b) sufficiently serious question going to the merits and a balance of hardships tipping decidedly in the moving party's favor. *Laureyssens v. Idea Group, Inc.*, 964 F.2d 131, 135-36 (2d Cir. 1992). Where, as here, an injunction will alter rather than maintain the status quo, or provide the movant with substantially all the relief sought, particularly when that relief cannot be undone even if the defendant prevails at a trial on the merits, the moving party must meet the higher standard of a 'clear' or 'substantial' showing of a likelihood of success on the merits. *Tom Doherty Assoc., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 33-34 (2d Cir. 1995). Regardless of which standard this Court applies, Defendants respectfully submit that the end result will be the same – Plaintiff's request for a preliminary injunction should be denied.

## 3.    Plaintiff Cannot Show A Clear, Substantial Or Even A Mere Likelihood Of Success On The Merits[3]

Plaintiff claims Defendants have infringed Plaintiff's copyrights by using the following images on CAI T-shirts: (1) the Tattoo Johnny Eagle; (2) the Tattoo Johnny Knife & Rose; and (3) the Tattoo Johnny Skull Rose on Top. All of Plaintiff's copyright claims lack merit.

---

[3] Plaintiff's Motion is predicated on Plaintiff's copyright infringement claim only. Accordingly, Defendants' Opposition addresses only Plaintiff's inability to succeed on the merits of its copyright infringement claim, although, Defendants contend, Plaintiff is not likely to succeed on the merits of any of its claims in the Complaint.

a.    <u>There Are Serious Questions As To Whether Plaintiff Even Owns The Copyrights At Issue</u>

To prevail on its claim for copyright infringement, Plaintiff must show ownership of a valid copyright and copying by Defendants. *Durham Indus., Inc. v. Tony Corp.*, 630 F.2d 905, 911 (2nd Cir. 1980).  Although the existence of a Copyright Office certificate or registration constitutes *prima facie* evidence of the validity of the copyright, the presumption of validity is rebuttable. *Durham, supra,* 630 F.2d at 908.  Where other evidence in the record casts doubt on the question, validity will not be assumed. *Id.*

In its Motion, Plaintiff asserts that there is "no dispute that Tattoo Johnny own [sic] the copyrights to the Registered Designs at issue" and accordingly, Plaintiff has established *prima facie* evidence of its ownership of valid copyrights.  (Motion, p. 14).  Despite Plaintiff's allegation as to its ownership of its copyrights, a quick search on the Internet (as well as Plaintiff's own deposition testimony) calls into question the validity of Plaintiff's registrations. For example, Damien Friesz, the artist who designed the Skull Rose On Top and the Knife and Rose designs (purportedly prepared for Plaintiff as works for hire) sells the identical designs on other websites that are not affiliated with Plaintiff.  (LaCava Decl. ¶5, Ex. C.)  Curiously, on those websites, there is a copyright symbol affixed to each of Mr. Friesz's designs naming Mr. Friesz as the artist and *2006* as the date of the copyright.  (*Id.*)  Plaintiff's copyright registration certificates for the same designs, however, state that Plaintiff is the author, the designs are works made for hire, the designs were completed in *2007* and the date of first publication was December 5, 2007.  (Bollt Decl., Ex. F.)  At the recent deposition of David Bollt, Plaintiff's principal, Mr. Bollt acknowledged these facts but could not offer any valid explanation for them. (Bollt Depo., 102:17-107:19.)  Further, Mr. Bollt could not attest to whether Plaintiff first published the designs at issue, or if the artists had published them prior to submitting them to Plaintiff's website.  (Bollt Depo. 76:2-22, 44:7-19, 45:8-46:10, 67:8-69:9, 69:13-19.)

In addition to designating the wrong publication date for at least two of the three designs at issue in this lawsuit, Plaintiff's copyright certificates falsely designate Plaintiff as the original

author of each of the designs at issue and describe the designs as works made for hire. (See Bollt

Decl., Ex. H.) Plaintiff's designs, however, do not qualify as works made for hire and Plaintiff is

not their original author. *See* 17 U.S.C. § 101. Pursuant to Section 101 of the Copyright Act, a

"work made for hire" is:

> **(1)** a work prepared by an employee within the scope of his or her employment; or

> **(2)** a work specially ordered or commissioned for use as a contribution to a collective work, as a part of a motion picture or other audiovisual work, as a translation, as a supplementary work, as a compilation, as an instructional text, as a test, as answer material for a test, or as an atlas, if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire. For the purpose of the foregoing sentence, a "supplementary work" is a work prepared for publication as a secondary adjunct to a work by another author for the purpose of introducing, concluding, illustrating, explaining, revising, commenting upon, or assisting in the use of the other work, such as forewords, afterwords, pictorial illustrations, maps, charts, tables, editorial notes, musical arrangements, answer material for tests, bibliographies, appendixes, and indexes, and an "instructional text" is a literary, pictorial, or graphic work prepared for publication and with the purpose of use in systematic instructional activities.

17 U.S.C. § 101.  Plaintiff's designs do not fall under either of these categories because

(1) they were not created by employees of Plaintiff; and (2) they do not fit into any of the

categories of "specially commissioned" work enumerated in subsection 2 above.  Accordingly,

Plaintiff's designs are not works made for hire and Plaintiff must have proper copyright

assignment from the artists which transfer to Plaintiff the copyrights to the designs.  Even if

Plaintiff has such assignments, that does not cure the false information submitted by Plaintiff to

the Copyright Office in connection with its registration certificates.  Based on the foregoing, the

evidence in the record casts serious doubt as to the validity of Plaintiff's claim that it owns the

copyrights at issue.  That, alone, is sufficient to warrant the denial of Plaintiff's Motion.

      b.  <u>Plaintiff's Designs Are Derivative Works, Based Upon Images Prevalent In The Tattoo Industry, And Lack The Requisite Originality Necessary To Support A Valid Copyright</u>

Before asking a court to consider the question of infringement, a party must demonstrate

the validity of its copyright, for in the absence of copyright protection even original creations are

in the public domain and may be freely copied. *Durham, supra,* 630 F.2d at 908; *Goldstein v. California,* 412 U.S. 546 (1964). Under federal law, it is well established that, "the one pervading element prerequisite to copyright protection, regardless of the form of the work is the requirement of originality." *Durham, supra,* 630 F.2d at 910 (despite plaintiff's copyright registration, there could be no copyright infringement where plaintiff's plastic reproductions of Disney figures lacked even modest degree of originality and were not copyrightable); *L. Batlin & Son, Inc. v. Snyder,* 536 F.2d 486, 489-90 (2d Cir. 1976).

The Second Circuit has interpreted this requirement to mean that to be copyrightable, a derivative work must contain some *substantial, not merely trivial,* originality. *Id.,* quoting *Chamberlin v. Uris Sales Corp.,* 150 F.2d 512 (2d Cir. 1945) (emphasis added). Moreover, the only aspects of a derivative work that are entitled to copyright protection are the non-trivial, original features, if any, contributed by the creator of the derivative work. *Id.* at 909. This requirement serves an essential purpose – to avoid the appropriation and monopolization of work in the public domain. *Id.* at 910 ("[t]o extend copyrightability to miniscule variations would simply put a weapon for harassment in the hands of mischievous copiers ..." (citation omitted)).

The above principles have particular significance with respect to depictions of elements found in nature, such as the eagle, skull, and rose. Notably, in *Satava v. Lowry,* 323 F.3d 805, 810 (9th Cir. 2003), the Court of Appeal eloquently articulated: "Nature gives us ideas of animals in their natural surroundings: ***an eagle with its talons extended*** to snatch a mouse; a grizzly bear clutching a salmon between its teeth; a butterfly emerging from its cocoon; a wolf howling at the full moon; a jellyfish swimming through tropical waters. These ideas, first expressed by nature, are the common heritage of mankind, and no artist may use copyright law to prevent others from depicting them." *Id.* at 813 (finding no copyright protection for artist's glass-in-glass sculptures of jellyfish because composed of unprotectable ideas and standard elements, the combination of which was also unprotectable) (emphasis added); *see also Aliotti v. R. Dakin & Co.,* 831 F.2d 898, 901 (9th Cir. 1987) (noting that: (1) Tyrannosaurus stuffed

11

animal's open mouth was not element protected by copyright law because Tyrannosaurus was carnivore and is commonly pictured with its mouth open; and (2) Pterodactyl stuffed animal's depiction as mobile hanging from ceiling was not protectable because Pterodactyl was a winged creature and thus is appropriate for such treatment). In *Satava*, 323 F.3d at 810, the Court reversed the trial court's grant of a preliminary injunction, stating:

> Satava may not prevent others from depicting jellyfish with tendril-like parts. He may not prevent others from depicting jellyfish in bright colors, because many jellyfish possess those body parts. He may not prevent others from depicting jellyfish swimming vertically, because jellyfish swim vertically in nature and often are depicted swimming vertically.

*Id.* at 811.

Here, Plaintiff fails to satisfy the "valid copyright" element that is required, *a priori*, for an infringement claim. Although Plaintiff possesses copyright registration certificates for its designs, any presumption of the validity of those copyrights is rebutted by the fact that Plaintiff's designs lack the requisite originality for copyright protection. Obviously, the idea of a flying eagle, a skull, and a knife through a rose are some of the most frequently used images in tattoo art.[4] Said images are so common in tattoo art that neither Plaintiff nor any other artist can truly lay claim to their creation, let alone prevent others from utilizing them. Plaintiff's designs play upon common tattoo designs in the public domain by making slight changes to those designs. The trivial variations in Plaintiff's designs are not substantial enough to constitute originality.

Not only are Plaintiff's images comprised of mere trivial variations to common tattoo designs, but they also involve elements found in nature that are not protected by copyright law. Similar to *Satava*, Plaintiff cannot prevent Defendants from depicting an eagle with its wings stretched open over its head, because eagles, by their nature, assume that position while in flight. Likewise, Plaintiff cannot prevent Defendants from depicting an eagle with its talons

---

[4] Plaintiff acknowledges that its artists are not the first to design an eagle, a skull with roses on its head, or a knife piercing through a rosebud. (Bollt Depo., 107:25-109:13.) Mr. Bollt admitted that Plaintiff undertook no efforts to determine whether those designs were original creations by the artists, or copies or derivatives of other works.[4] (*Id.*)

outstretched as though they were holding or about to grab something and the feathers on its head ruffled as it soars downward, because that is how eagles often appear in nature. These represent ideas, first expressed by nature, and later represented in a plethora of artistic media, including tattoos and apparel, that no artist may monopolize by virtue of a copyright.[5]

Similarly, Plaintiff cannot claim a copyright as to the shape of a rose bud, its petals, rosy color, stem, leaves or thorns. Nor can Plaintiff claim a copyright as to the idea of a knife with a curved, engraved blade or the combination of such a knife piercing through a rose. Plaintiff's depiction of such is nothing more than a standard and stereotypical design that has only a trivial quantum of originality. Plaintiff's knife and rose design is not entitled to copyright protection.

The same is true for Plaintiff's Skull Rose on Top design. Plaintiff cannot benefit from copyright protection for elements that are dictated by the anatomy of the human skull, such as its shape, structure, components and overall general appearance. Plaintiff cannot benefit from copyright protection for those aspects of its design that are negligible variations of designs in the public domain. The toothy grin, flowers and swirl design on Plaintiff's skull are commonly found in skull tattoos and are part of the public domain. (See Bowers Decl., Ex. D.) Accordingly, Plaintiff's minor variations to these elements are not sufficiently original to warrant copyright protection.

> c.    Even If Plaintiff's Copyrights Were Valid, Which They Are Not, Defendants' Designs Do Not Infringe Those Rights

Assuming, *arguendo*, that Plaintiff holds valid copyrights in its designs, that fact alone is insufficient to establish infringement. Rather, Plaintiff must also demonstrate that Defendants copied those designs. *Durham, supra,* 630 F.2d at 911. Plaintiff may prove copying by showing

---

[5] For example, Plaintiff's "copyrighted" eagle design bears remarkable similarity to Harley Davidson's famous eagle emblem, with only minor variations. Surely, Plaintiff cannot, in good faith, claim to be the original creator of such a design.

access and "substantial similarity" of the two works. *Id.*[6]  The Second Circuit applies an

"ordinary observer" test to determine whether there is substantial similarity. *Id.*; *Ideal Toy Corp.*

*v. Fab-Lu Ltd. (Inc.)*, 360 F.2d 1021, 1022-23 (2d Cir. 1966).  The ordinary observer test asks

"whether an average lay observer would recognize the alleged copy as having been appropriated

form the copyrighted work." *Durham, supra,* 630 F.2d at 912; *Ideal Toy Corp.,* 360 F.2d at

1022-23 (holding that although dolls were similar with respect to standard doll features such as

full faces; pert upturned noses; bow lips; large, widely spaced eyes and slim figures, distinct

differences existed such that ordinary observer would not recognize the alleged copy doll as

having been appropriated).

A general impression of similarity is not sufficient to make out a case of infringement.

*Durham, supra,* 630 F.2d at 912.  Moreover, it is "an axiom of copyright law that the protection

granted to a copyrightable work extends only to the particular expression of an idea and never to

the idea itself." *Id., Reyher v. Children's Television Workshop*, 533 F.2d 87, 90 (2d Cir. 1976).

For example, in *Herbert Rosenthal Jewelry Corp. v. Honora Jewelry Co.*, 509 F.2d 64 (2d Cir.

1974), the Second Circuit Court of Appeal held that the owner of a copyright on a particular gold

turtle pin had no exclusive right to the idea embodied therein.  *Id.* at 66.

Where the protected work and the accused work express the same idea, the similarity that

inevitably stems solely from the commonality of the subject matter is not proof of unlawful

copying.  *Durham*, *supra,* 630 F.2d at 913; *see also Herbert Rosenthal Jewelry Corp. v.*

*Kalpakian*, 446 F.2d 738, 740 (9th Cir. 1971) (plaintiff may not prevent others from

manufacturing and selling jeweled bees); *Reyher, supra,* 533 F.2d at 91 ("[s]imilarity of

expression ... which necessarily results from the fact that the common idea is only capable of

expression in more or less stereotyped form will preclude a finding of actionable similarity.");

---

[6] Defendants do not dispute that they had access to Plaintiff's designs.  As such, this section of
Defendants' Opposition focuses solely on whether the protected elements, if any, of Defendants'
and Plaintiff's designs are substantially similar.

*Uneeda Doll Co. v. P & M Doll Co.*, 353 F.2d 788 (2d Cir. 1965) (no actionable infringement where copying limited to abstract idea of doll, on red and white striped poll in display box); *Russ Berrie & Co. v. Jerry Elsner Co.*, 482 F.Supp. 980, 986 (S.D.N.Y. 1980) (no infringement where competing Santas had something of same aesthetic appeal due to features common to all Santas but differed in other respects).

Even if Plaintiff's designs (or portions thereof) are appropriate for copyright protection, which they are not, Defendants' designs do not give rise to actionable infringement. Any similarity between Plaintiff's and Defendants' designs stems solely from the commonality of the subject matter of those designs and does not extend to any protectable expression in the designs.

i.    The Eagle Designs

The only similarities between Plaintiff's and Defendants' eagle designs relate to those attributes dictated by an eagle's physiology and natural setting which lack the requisite originality for copyright protection. Excluding those unprotected elements from the substantial similarity analysis, as is required, it is clear that the two designs are not substantially similar. Almost all of the feathers on Plaintiff's eagle are varying shades of brown, while the feathers on Defendants' eagle are a mixture of orange, yellow, red, white, brown and black. (See LaCava Decl., Exs. A & B.) The feet of Plaintiff's eagle are brown while, conversely, the feet of Defendants' eagle are white with orange talons. (See *Id.*) Plaintiff's design has orange rays extending upward between the wings. In contrast, Defendants' eagle has the "CA" symbol between its wings. (See *Id.*) The talons on Plaintiff's eagle are empty, but the talons on Defendants' eagle grasps a banner that stretches across the eagle's forehead. Plaintiff's eagle has no banner. (See *Id.*) Moreover, Defendants' eagle is sometimes super-imposed over a larger shadow of the same eagle and sometimes it is jeweled with rhinestones. Plaintiff's designs do not incorporate either of those elements. (See *Id.*) In short, although Plaintiff's and Defendants' eagle designs may share some of the same aesthetic appeal due to features common to all eagles, their many differences in other respects preclude a finding of substantial similarity.

ii.    <u>The Knife & Rose Designs</u>

Just like the eagle designs, the only similarities between Plaintiff's and Defendants' knife and rose designs are those that are standard, stock or common to the subject matter and medium. The image of a knife piercing a rose is a particularly common tattoo. (Bowers Decl., Ex. F.) Apart from their common ideas, however, Plaintiff's and Defendants' knife and rose designs are not substantially similar. For instance, Plaintiff's design depicts a single knife, with the blade pointing downward and piercing a single rosebud. (LaCava Decl., Ex. A.) Defendants' design, on the other hand, depicts two knives, blades pointing upward, piercing two rosebuds and crossing each other as they emerge from the rosebuds. (*Id.*, Ex. B.) The handle on Plaintiff's knife is feathered, while the handles on Defendants' knives are smooth. (*Id.*, Exs. A & B.) Thus, the protected elements of Plaintiff's and Defendants' designs are not substantially similar.

iii.    <u>The Skull Designs</u>

The protectable expression, if any, found in Plaintiff's and Defendants' skull designs also lack substantial similarity. The eyes, which give the skull much of its character, are notably different, as is the design on the top of the skull. (LaCava Decl., Exs. A & B.) Moreover, Defendants' design is expressed in an entirely different manner as the two skulls face one another and are connected by a banner across the bottom with the two knives crossing through the center of the T-shirt. (*Id.*, Ex. A & B.) The remaining elements of the designs, namely the shape of the skull, the toothy grin and swirl design are common to skull tattoos and are not original, or protectable. (Bowers Decl., Ex. D.) As such, there is no actionable similarity between Plaintiff's design and Defendants' design.

**4.    Plaintiff Fails To Show Any Irreparable Injury**

To satisfy the irreparable harm requirement, Plaintiff must demonstrate that absent a preliminary injunction it will suffer an injury that is neither remote or speculative, but actual and imminent and one that cannot be remedied if the court waits until the end of a trial on the merits to resolve the harm. *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005).

Recognizing its inability to make this essential showing, Plaintiff attempts to excuse its failure by urging this Court to *presume* irreparable harm. (Motion, pp. 16-17.) Plaintiff's request is fatally flawed in at least one key respect: In copyright cases, only "if *probable success*—a *prima facie* case of copyright infringement—can be shown, the allegations of irreparable injury need not be as detailed," because such injury can normally be presumed when a copyright is infringed. *Wainwright Sec. v. Wall Street Transcript Corp.*, 558 F.2d 91 (2d Cir. 1977). For all of the reasons explained above, however, Plaintiff cannot establish a probability of success on its claim for copyright infringement. Thus, contrary to Plaintiff's assertion, Plaintiff is not entitled to a presumption of irreparable harm.

In any event, Plaintiff's Motion is devoid of any showing of "irreparable harm" and therefore fails under either standard. Indeed, Plaintiff's only explanation as to why a preliminary injunction should issue is its unsubstantiated allegation that it is somehow in competition with Defendants because it entered into at T-shirt licensing deal. Importantly, Plaintiff's offer of evidence to support this allegation, has been gutted by redactions to the point that its full effect and meaning are unascertainable.

There is a very critical and disturbing reason behind Plaintiff's evidentiary absence. In point of fact, and contrary to the representation in the moving papers, the deposition testimony of Mr. Bollt confirms that Plaintiff has no such licensing agreement in place for the specific designs at issue in this litigation. Mr. Bollt testified that currently the eagle design is licensed for a "cell phone menu interface" and an "Ipod pin." (Bollt Depo., 50:16-25, 53:17-23.) When asked specifically whether Plaintiff has licensed the eagle, or any other of the designs at issue, for use on T-shirts, Plaintiff responded that the eagle was "an image [it] had every intention of using on T-shirts" but the design itself has not yet been licensed for that purpose. (Bollt Depo., 78:4-10, 78:15-80:18.) Rather, Plaintiff was "going to go through [its] artwork and hand pick [its]

favorite artists and [its] favorite images to bring to the market."[7]  (Bollt Depo., 78:18-79:2.) Absent full disclosure of an existing license for the use of the designs at issue on apparel, Plaintiff cannot demonstrate that it will be injured, irreparably or otherwise, if its Motion is denied and this case proceeds to trial on the merits (assuming it can get around its jurisdictional hurdle).  Given the drastic remedy sought, equity demands that Plaintiff satisfy the irreparable harm requirement before forcing CAI to shut down manufacturing and production of its top-selling designs.  Because Plaintiff has failed to do so, its Motion should be denied.

**5.      The Balance of The Hardships Weighs Heavily in Defendants' Favor**

Where balance of the equities is relatively equal, the balance does not tip in the plaintiff's favor and the preliminary injunction should be denied.  *Video Trip Corp. v. Lightning Video, Inc.*, 866 F.2d 50, 52 (2d Cir. 1989).  Moreover, where the plaintiff will suffer loss of goodwill but the defendant will lose a huge part of its business, the balance of equities tips in favor of the defendant.  *Random House v. Rosetta Books, LLC*, 283 F.3d 490, 492 (2d Cir. 2002).

Similar to its irreparable harm analysis, Plaintiff erroneously asserts that the Court need not give any attention or weight to the balance of the hardships because Plaintiff has made a strong showing of likely success on the merits.  (Motion, p. 18.)  Again, for all of the reasons explained above, Plaintiff has not made any showing of likely success on the merits.  Thus, Plaintiff cannot escape its burden of demonstrating that the balance of hardships tips in its favor.

Plaintiff fails to identify a single tangible injury that it will suffer if its Motion is denied. Plaintiff merely assumes that the balance of hardships is a "non-factor" and unilaterally concludes that "the balance of the hardships tips decidedly in its favor."  (Motion, pp. 18-19.)

---

[7] Interestingly, in Mr. Bollt's deposition testimony (which directly contradicts paragraph 12 of his sworn declaration), Mr. Bollt states that in May of 2008, he went to the Christian Audigier website because he was looking for "inspiration and examples" for Plaintiff's own prospective apparel line and that, "looking at Don Ed Hardy and Christian Audigier, you know, when it's [their] intention to go into the apparel business, it's sort of a natural thing for [Plaintiff] to do." (Bollt Depo., 92:14-93:16.)  Later in his deposition, Mr. Bollt refers to CAI's eagle T-shirt as "remarkable."  (Bollt Depo., 97:24-98:3.)

Plaintiff also argues that any hardship to Defendants should be disregarded because, "the inconvenience to Defendants would be nothing more than economic [sic], in the form of delayed profits from anticipated sales" and "[c]opyright infringement can be expensive." (Motion, p. 19.)

Plaintiff is correct though that Defendants will suffer economic loss if the Court grants a preliminary injunction. Considering that the merchandise Plaintiff seeks to enjoin represents some of CAI's most popular garments, an injunction will cost CAI a large part of its business. (Mandell Decl. ¶¶ 5 & 6 .) In addition, the injunction will disrupt the status quo and irreparably harm Defendants' relationships with distributors, retailers and end-using consumers. (*Id.*, ¶ 6.) In contrast, Plaintiff will not suffer any harm, economic or otherwise, if its request for an injunction is denied. Plaintiff has produced no evidence of any other business activities that could conceivably suffer harm pending a trial on the merits, likely because Plaintiff's business of selling tattoo designs on its website for personal use will continue uninterrupted and unharmed while this litigation is pending.

In sum, if Plaintiff's requested relief is granted, Defendants will lose millions of dollars in hard-earned sales as well as the numerous man-hours spent in creating and marketing their merchandise. If Plaintiff's Motion is denied, though, the status quo between the parties is maintained and Plaintiff can continue to profit from the sale of its tattoo designs until its claims are heard by a jury on the merits. The balance of the hardships weighs only in Defendants' favor. Accordingly, Plaintiff's Motion must be denied.

### 6.    If The Court Is Inclined To Grant Plaintiff's Motion, Plaintiff Must First Post Adequate Security Before The Injunction Is Issued

If a court is inclined to issue a preliminary injunction, the movant must give security "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. Proc. 65(c). The purpose of requiring security is to guarantee payment of costs and damages incurred by a party who is

wrongfully enjoined or restrained. *Interlink Int'l. Fin. Servs., Inc. v. Block*, 145 F.Supp.2d 312, 314 (S.D.N.Y. 2001). The amount of the bond posted can represent the limit that a wrongfully enjoined or restrained party may recover. *Id.* Thus, "[w]hen setting the amount of security, district courts should err on the high side," because "[a]n error in the other direction produces irreparable injury ..." *Mead v. Johnson & Co. v. Abbott Laboratories*, 201 F.3d 883, 888 (7th Cir. 2000). The court's failure to require security is grounds for reversible error. *Hoechst Diafoil Co. v. Nan Ya Plastics, Corp.*, 174 F.3d 411, 421 (4th Cir. 1999).

As demonstrated in Mr. Mandell's declaration, the devastation and irreparable harm that Defendants will suffer if the injunction is granted is severe. Defendants would request a bond in the amount of at least $5,000,000.00 in the event this Court grants the preliminary injunction.

## III.    CONCLUSION

For the foregoing reasons, Plaintiff's Motion for a Preliminary Injunction and Expedited Discovery should be denied in its entirety.

Dated:  New York, New York
       July 21, 2008

Respectfully submitted,
DICKSTEIN SHAPIRO, LLP


By: _Richard LaCava_

Richard LaCava (RL 1671)
Brian D. Siff (BS 6135)
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 277-6500
Facsimile: (212) 277-6501

Attorneys for Defendants
Christian Audigier, Inc., Shop on Stage,
Inc., and Christian Audigier