UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TATTOO JOHNNY, INC.,<br><br>        Plaintiff,<br><br>v.<br><br>CHRISTIAN AUDIGIER, INC., SHOP ON STAGE, INC., CHRISTIAN AUDIGIER, TY BOWERS, MACY'S, INC., BLOOMINGDALE'S, INC., NORDSTROM, INC., VANGUARD APPAREL LIMITED, JOHN DOES 1-100, inclusive,<br><br>        Defendants. | Docket No.: 1:08-cv-5572 |

---

**PLAINTIFF'S REPLY MEMORANDUM IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION AND EXPEDITED DISCOVERY**

---

Of Counsel and
On the brief:

Mark D. Miller, Esq. (7450)
OLENDERFELDMAN LLP
29 West 38th Street, 17th Floor
New York, New York 10018

2840 Morris Avenue
Union, New Jersey 07083
(908) 964-2486
Attorneys for Plaintiff

On the brief:
Jonas M. Seider, Esq.
OLENDERFELDMAN LLP

# TABLE OF CONTENTS

I. PRELIMINARY STATEMENT .................................................................................. 1

II. ARGUMENT ............................................................................................................... 1

   A. *THIS COURT HAS JURISDICTION OVER PLAINTIFF'S CLAIMS AS THEY ARE NOT SUBJECT TO A BINDING ARBITRATION PROVISION* ............................. 1
      1. No Agreement Exists as Between the Parties ................................................. 1
      2. The Arbitration Clause in the Terms and Conditions is Narrow and Does Not Encompass the Issues of this Litigation ............................................................ 2
      3. Plaintiff's Claims Arise Under the Copyright Act and Not Under a Breach of the Terms and Conditions ....................................................................................... 4
      4. This Court Has Jurisdiction Over Preliminary Injunctions Regardless of Right to Arbitration ........................................................................................................ 5
      5. The Defendants Are Not Parties to the Terms and Conditions and Have No Privity to Enforce the Agreement ..................................................................... 5
      6. A Contract Cannot Divest Federal Court of Exclusive Jurisdiction Over Claims Arising Under the Copyright Act .................................................................... 6

   B. *PLAINTIFF'S GRANT OF A LIMITED EXCLUSIVE LICENSE HAS NOT DIVESTED IT OF STANDING TO ENFORCE ITS OWN COPYRIGHTS* ............ 6
      1. Plaintiff Has Retained the Right to Enforce Its Own Copyrights in the Licensing Agreement ...................................................................................................... 6

   C. *PLAINTIFFS ARE ENTITLED TO A PRELIMINARY INJUNCTION ENJOINING FURTHER COPYRIGHT INFRINGEMENT* .................................................... 7
      1. Plaintiffs Are Likely to Succeed on the Merits of Their Claim of Copyright Infringement ................................................................................................... 7
         a. Plaintiff Owns Valid Copyrights in Plaintiff's Designs ............................... 7
         b. Any Errors on the Copyright Registration for Plaintiff's Design, If Any, are Innocent and Do Not Invalidate Plaintiff's Rights Therein .......................... 7
         c. Plaintiff's Designs Are Original and Validly Protected by Copyright ......... 8
         d. Defendants' Designs Are Uncannily Similar to Plaintiff's Designs ........... 10
            i. Eagle Design .......................................................................................... 10
            ii. Knife and Rose Design ......................................................................... 10
            iii. Skull Design ......................................................................................... 11
         e. Plaintiffs Will Suffer Irreparable Harm In the Absence of a Preliminary Injunction ................................................................................................... 11
         f. The Balance of Hardships Weighs Heavily in Plaintiffs' Favor ................. 11

*D. ANY SECURITY REQUIRED TO BE POSTED BY PLAINTIFF FOR THE
   ISSUANCE OF A PRELIMINARY INJUNCTION SHOULD BE MINIMAL* ........ 12

**III. CONCLUSION** .......... 13

# TABLE OF AUTHORITIES

*Case Law*

*Althin CD Med., Inc. v. West Suburban Kidney Ctr.*, 874 F. Supp. 837 (N.D. Ill. 1994) --    6

*Big Fights, Inc. v. Ficara*, 1996 WL 492988 (S.D.N.Y. 1996) --    7,8

*Budish v. Gordon*, 784 F.Supp. 1320 (N.D. Ohio 1992) --    12

*Clarkson Co., Ltd. v. Shaheen*, 544 F.2d 624 (2nd Cir. 1976)--    12

*Cohen v. Allstate Ins. Co.*, 231 N.J. Super. 97 (App. Div. 1989) --    3

*Concrete Mach. Co. v. Classic Lawn Ornaments, Inc.*, 843 F.2d 600 (1st Cir. 1988) --    12

*Doctor's Associates, Inc. v. Stuart*, 85 F.3d 975 (2nd Cir. 1996) --    12

*Flaherty v. Filardi*, 388 F.Supp.2d 274 (S.D.N.Y. 2005) –    10

*Foont-Freedenfeld Corp. v. Electro-Protective Corp.*, 126 N.J. Super. 254 (App. Div. 1973) --    2

*Ginsberg v. Bistricer*, 2007 WL 987169 (App. Div. 2007) --    2

*Gonzales v. Kid Zone, LTD.*, 2001 WL 1329300 (N.D. Ill. 2001) --    9

*Gund, Inc. v. SKM Enterprises, Inc.*, 2001 WL 125366 (S.D.N.Y. 2001) --    10

*Hamil America, Inc. v. GFI*, 193 F.3d 92 (2d Cir. 1999) --    8

*Kamakazi Music Corp. v. Robbins Music Corp.*, 1980 WL 1159 (S.D.N.Y. 1980) –    4, 5, 6

*Knight v. New England Mut. Life Ins. Co.*, 220 N.J. Super. 560 (App. Div. 1987) --    1

*Lederman v. Prudential Life Ins. Co. of America, Inc.*, 385 N.J. Super. 324 (App. Div. 2006) --    2

*Marshall v. New Kids on the Block Partnership*, 780 F. Supp. 1005 (S.D.N.Y. 1991) --    4

*Nolan v. Lee Ho*, 120 N.J. 465 (1990) --    2

*O.P. Solutions, Inc. v. Intellectual Property Network, Ltd.*, 1999 WL 47191 (S.D.N.Y. 1999)    8, 9, 10

*Quirke v. Chessie Corp.*, 368 F.Supp. 558 (S.D.N.Y. 1974) --    5

*Reinhardt v. Wal-Mart Stores, Inc.*, 547 F.Supp.2d 346, 351 (S.D.N.Y. 2008) --    6

*Roso-Lino Beverage Distributors, Inc. v. Coca-Cola Bottling Company of New York, Inc.*, 749 F.2d 124 (2nd Cir. 1984) --    5

*Satava v. Lowry*, 323 F.3d 805 (9th Cir. 2003) --    9

*Specht v. Netscape Communications Corp.*, 150 F.Supp.2d 585 (S.D.N.Y. 2001) --    1

*State v. Ernst & Young, L.L.P.*, 386 N.J. Super. 600 (App. Div. 2006) --    1

*Tasini v. New York Times. Co.*, 206 F. 3d 161 (2d Cir. 2000) --    4

*Totaplan Corp. of America v. Colborne*, 14 F.3d 824 (2nd Cir. 1994) --    1

***Statues***

| | |
|---|---:|
| 17 U.S.C.A. §§ 410(a) and (c) -- | 8 |
| 28 U.S.C. §1338(a) -- | 6 |

***Treatise***

| | |
|---|---:|
| *Compendium II: Compendium of Copyright Office Practices* § 1507.5(c) (1984) – | 8 |

## I.   PRELIMINARY STATEMENT

This reply brief is respectfully submitted on behalf of Plaintiff Tattoo Johnny, Inc. ("Plaintiff"), in further support of Plaintiff's pending motion for preliminary injunction (the "Motion" or "Plaintiff's Motion") enjoining Defendants Christian Audigier, Inc., Shop on Stage, Inc., Christian Audigier, Ty Bowers, Macy's, Inc., Bloomingdale's, Inc., Nordstrom, Inc., and Vanguard Apparel Limited (collective, the "Defendants") from continuing to infringe upon Plaintiff's registered copyrights ("Plaintiff's Designs").

## II.   ARGUMENT

### A.   THIS COURT HAS JURISDICTION OVER PLAINTIFF'S CLAIMS AS THEY ARE NOT SUBJECT TO A BINDING ARBITRATION PROVISION

Defendants argue that Plaintiff's website Terms and Conditions ("Terms and Conditions") divests this Court of jurisdiction over this dispute. For a multitude of reasons, only some of which are set forth below, this Court has the requisite jurisdiction to rule on Plaintiff's Motion and all other claims of this litigation.

#### 1.   *No Agreement Exists as Between the Parties*

In deciding which state law to apply to determine whether a contract was formed, the Court will rely upon the forum state's choice-of-law rules. Specht v. Netscape Communications Corp., 150 F.Supp.2d 585, 591 (S.D.N.Y. 2001). "On substantive issues of law such as contract formation, New York courts give 'controlling effect to the law of the jurisdiction which has the greatest concern with, or interest in, the specific issue raised in the litigation.'" Totaplan Corp. of America v. Colborne, 14 F.3d 824, 832 (2nd Cir. 1994) (citation omitted). Since Plaintiff is a New Jersey corporation, and the Defendants intentionally transacted business with Plaintiff, New Jersey has the greatest with the issue of contract formation.

"In order for a contract to form,..., there must be a 'meeting of the minds,' as evidenced by each side's express agreement to every term of the contract." State v. Ernst & Young, L.L.P., 386 N.J. Super. 600, 612 (App. Div. 2006). "A meeting of the minds occurs when there has been a common understanding and mutual assent of all the terms of a contract." Knight v. New England Mut. Life Ins. Co., 220 N.J. Super. 560, 565 (App. Div. 1987).

Pursuant to the Terms and Conditions, Plaintiff only contemplates human users (as the Terms

1

and Conditions restricts the use of downloaded designs to personal tattoo use only, and only humans can get personal tattoos). See July 21, 2008 Declaration of Richard LaCava, Esq. ("LaCava Dec."), Ex. E. Corporate entities were never contemplated users of the site. Because Defendants are not contemplated users, there could not possibly have been a "meeting of the minds" between Plaintiff and Defendant in connection with the Terms and Conditions. Furthermore, when Plaintiff contacted Defendant Ty Bowers, Mr. Bowers stated, over Plaintiff's disagreement, that he believed he could use Plaintiff's Designs for any purpose. See August 1, 2008 Declaration of Jonas M. Seider, Esq. ("Seider Dec."), Ex. C, 90:11-14. Mr. Bowers' belief that he could use Plaintiff's Designs for any purpose evidences that no common understanding and mutual assent occurred for all terms of the Terms and Conditions. Since no agreement was ever formed, the arbitration clause is superfluous.

Moreover, Defendants cannot seek refuge under an agreement that they fraudulently obtained. "A contract that was induced by fraud may be deemed invalid and unenforceable under the law." Ginsberg v. Bistricer, 2007 WL 987169, *15 (App. Div. 2007) (unpublished opinion); citing Nolan v. Lee Ho, 120 N.J. 465, 472 (1990). "Legal fraud or misrepresentation consists of a material representation of a presently existing or past fact, made with knowledge of its falsity, with the intention that the other party rely thereon, and he does so rely to his damage." Foont-Freedenfeld Corp. v. Electro-Protective Corp., 126 N.J. Super. 254, 257 (App. Div. 1973). As applied to this case, Defendants: (i) materially misrepresented their intended use of Plaintiff's Designs; (ii) knew they were going to use Plaintiff's Designs outside the scope of personal tattoo use; and (iii) intended that Plaintiff rely on the misrepresentation of use. Had Plaintiff known that Defendants intended to use Plaintiff's Designs outside that scope, Plaintiff would never have sold Defendants Plaintiff's Designs. As a result of this fraudulent inducement, the Terms and Conditions are unenforceable.

> **2.  *The Arbitration Clause in the Terms and Conditions is Narrow and Does Not Encompass the Issues of this Litigation***

Even if there was a valid agreement, which there was not, this dispute does not fall within the scope of the arbitration provision on which Defendants rely. Since the Terms and Conditions choose New Jersey law to govern disputes, such law shall be applied here. "'[A]rbitration is simply a matter of contract between the parties; it is a way to resolve those disputes - *but only those disputes - that the parties have agreed to submit to arbitration.*'" Lederman v. Prudential Life Ins. Co. of America, Inc., 385 N.J. Super. 324, 344 (App. Div. 2006) (emphasis added); (citation omitted). Broad arbitration clauses refer all disputes arising out of or relating to a contract to arbitration, while narrow arbitration

2

clauses limit arbitration to specific types of disputes. Id. at 343. "[T]he duty to arbitrate, and the scope of the arbitration, are dependent solely on the parties' agreement." Cohen v. Allstate Ins. Co., 231 N.J. Super. 97, 101 (App. Div. 1989).

The Terms and Conditions contain an explicitly narrow arbitration clause buried within two sentences reserving Plaintiff's rights to pursue disputes in judicial forums. Since the arbitration clause does not cover all disputes under the Terms and Conditions, this clause is narrow. The pertinent part of the Terms and Conditions reads as follows:

> Venue for all disputes arising under this Agreement shall lie exclusively in the Superior Courts of the State of NJ. Users of this website agree that any and all disputes arising from the use of this website, or the ordering of materials from this website, shall be settled by binding arbitration. Notwithstanding the foregoing, Tattoo Johnny shall have the right to commence and prosecute any legal or equitable action or proceeding before any non-US court of competent jurisdiction to obtain injunctive or other relief in the event that, in the opinion of Tattoo Johnny, such action is necessary or desirable.

See LaCava Dec., Ex. E. The claims at issue do not fall within the purview of such a narrow provision. Arbitration is only binding for disputes arising from the "use of th[e] website, or the ordering of materials from th[e] website." Plaintiff's claims do not relate to the use of the website or the ordering of materials therefrom. This arbitration provision is intended to cover disputes such as claims arising from Plaintiff's unauthorized disclosure to third-parties of a user's private information, a user's unauthorized access of the website, fraudulent purchases, user injected viruses, faulty or bugged downloads, purchaser dissatisfaction, product liability claims in connection with downloaded or shipped goods, and other such related disputes. See August 1, 2008 Declaration of David Bollt, ¶2. Defendants do not complain about the functionality of the website or that the designs ordered were defective. Plaintiff's claims arise from the Defendants' infringement well after Plaintiff's Designs were purchased and downloaded. As such, Defendants' purchase of Plaintiff's Designs and the subsequent infringement of Plaintiff's copyright in those designs are two entirely separate acts. Furthermore, neither of the carved out issues under which arbitration would be binding are intellectual property claims. Since Plaintiff crafted a narrow provision limiting arbitration to certain and specific issues, Plaintiff's failure to include intellectual property claims evidences that such claims were not intended for arbitration.

Moreover, the arbitration provision is contextually narrow as well. The sentence immediately preceding the arbitration provision provides that venue for all disputes arising under the Terms and Conditions lay exclusively in the Superior Court of New Jersey. The sentence immediately following

3

the arbitration provision also states that other jurisdictions may hear a claim arising under the Terms and Conditions. In the copyright notice provision, Plaintiff refers to criminal penalties for copyright infringement which is in the exclusive jurisdiction of the federal courts. See LaCava Dec., Ex. E. Given the various judicial forums stated in the Terms and Conditions, it is clear that arbitration was not to be the sole method of dispute resolution. Since Plaintiff is incorporated in the United States, there is no need to reserve rights to sue in Federal courts for matters that fall within the Court's exclusive jurisdiction. Plaintiff went even further and included its right to sue for legal and equitable rights (including specifically mentioning injunctive relief) even in "non-US" courts. Looking at the Terms and Conditions in its entirety, the arbitration provision is narrow, does not cover Plaintiff's claims, and Plaintiff's claims are reserved for the judiciary.

### 3. *Plaintiff's Claims Arise Under the Copyright Act and Not Under a Breach of the Terms and Conditions*

Plaintiff's claims are strictly copyright claims that arise under the Copyright Act.

> [T]he fact that a party has licensed certain rights to its copyright to another party does not prohibit the licensor from bringing an infringement action where it believes the license is exceeded or the agreement breached . . . An infringement claim may be brought to remedy unauthorized uses of copyrighted material.

Tasini v. New York Times. Co., 206 F. 3d 161, 170-171 (2d Cir. 2000). If a plaintiff alleges that a licensee acts outside the scope of his license and those allegations are true, then the licensee stands in the same position as a stranger to the license and a plaintiff may bring an action against that licensee for infringement. Marshall v. New Kids on the Block Partnership, 780 F. Supp. 1005 (S.D.N.Y. 1991).

No where in the Terms and Conditions do Defendants have the right to use Plaintiff's Designs on T-Shirts. See LaCava Dec., Ex. E. Therefore, the actions by Defendants falls outside of the scope of the license granted in the Terms and Conditions, and Defendants can be sued for copyright infringement. Defendants' reliance on Kamakazi Music Corp. v. Robbins Music Corp., 1980 WL 1159 (S.D.N.Y. 1980) is misplaced. In Kamakazi, the party asserting that copyright claims could not be arbitrated, affirmatively submitted to arbitration and the arbitration provision arose out of a copyright licensing agreement and encompassed all disputes arising out of or relating to the subject matter thereof (which was copyright). It appears from Kamakazi, in order for a copyright claim to be arbitrable, the arbitration provision itself must be overly broad to govern claims under the Copyright Act, or a party must voluntarily submit his claims under the Copyright Act to arbitration. Since the arbitration provision does not expressly state that copyright claims are arbitrable and Plaintiff has not

4

submitted to arbitration, the mere fact that an arbitrator can hear a copyright claim is inapposite.

Moreover, the Court in <u>Kamakazi</u> determined that certain copyright claims are not subject to arbitration. <u>Id.</u> at 231. "The only 'public interest' in a copyright claim concerns the monopoly inherent in a valid copyright." <u>Id.</u> Since Defendants argue against the validity of Plaintiff's copyright in Plaintiff's Designs, then Defendants are submitting to exclusive federal jurisdiction. Federal Courts should not abdicate their responsibility under exclusive federal jurisdiction of copyright to allow arbitrators to determine what federal copyright examiners may accept for copyright registration. To allow arbitrators to decide such issues would completely eviscerate any uniformity in copyrightable subject matter.

### 4.  *This Court Has Jurisdiction Over Preliminary Injunctions Regardless of Right to Arbitration*

Assuming, *arguendo*, that this litigation falls within the narrow arbitration provision of the Terms and Conditions, the Court still has the authority and jurisdiction to provide provisional remedies even if arbitration is necessary. "The fact that a dispute is to be arbitrated, however, does not absolve the court of its obligation to consider the merits of a requested preliminary injunction." <u>Roso-Lino Beverage Distributors, Inc. v. Coca-Cola Bottling Company of New York, Inc.</u>, 749 F.2d 124, 125 (2nd Cir. 1984). (Second Circuit reversed District Court's denial of a preliminary injunction on the grounds that the matter was subject to a broad arbitration clause, holding that arbitration does not strip the court of the power to grant injunctive relief, even with broad arbitration provisions). Thus, the Court does indeed have jurisdiction over Plaintiff's Motion even if arbitration is necessary, which it is not.

### 5.  *The Defendants Are Not Parties to the Terms and Conditions and Have No Privity to Enforce the Agreement*

The Defendants were not party to the Terms and Conditions and thus, have no privity to enforce the arbitration provision. Since the Defendants were not the entities who purchased and downloaded Plaintiff's Designs, they are not signatories to the Terms and Conditions and cannot now seek to enforce provisions of an agreement to which they are not a party. In order for a third party to enforce a contract, they must have been an intended beneficiary of the contract. <u>Quirke v. Chessie Corp.</u>, 368 F.Supp. 558, 562 (S.D.N.Y. 1974). Under the Terms and Conditions, the Defendants were not parties to the agreement, nor were they intended beneficiaries of the agreement. The agreement contemplates, and the Plaintiff's business entails, that only human beings can affirmatively access the

5

website, download a design, and *use the design as a personal tattoo*. Since fictional entities cannot possibly get personal tattoos, the Defendants are not intended beneficiaries of the Terms and Conditions and cannot enforce the provisions therein.

### 6. *A Contract Cannot Divest Federal Court of Exclusive Jurisdiction Over Claims Arising Under the Copyright Act*

The Federal District Courts have original and exclusive jurisdiction over claims arising under the Copyright Act. 28 U.S.C. §1338(a). Even if the arbitration clause were applicable here, which it is not, the federal court cannot be divested of original and exclusive jurisdiction over a copyright claim when the claim does not arise under contract. Reinhardt v. Wal-Mart Stores, Inc., 547 F.Supp.2d 346, 351 (S.D.N.Y. 2008). Furthermore, exclusive federal jurisdiction over claims arising under the Copyright Act cannot be divested by contract. Kamakazi, 1980 WL 1159 ("While defendants interpose a defense based upon construction of a contract, this defense does not divest the court of federal question jurisdiction"). Since Plaintiff's infringement claims arise directly under the Copyright Act, not under the Terms and Conditions, or any breach thereof, this Court retains original and exclusive jurisdiction over the Motion and the entire litigation. Accordingly, the Terms and Conditions do not apply.

### B. PLAINTIFF'S GRANT OF A LIMITED EXCLUSIVE LICENSE HAS NOT DIVESTED IT OF STANDING TO ENFORCE ITS OWN COPYRIGHTS

#### 1. *Plaintiff Has Retained the Right to Enforce Its Own Copyrights in the Licensing Agreement*

Defendants claim that Plaintiff lacks standing to enforce the copyright claims by arguing that Plaintiff has exclusively licensed its rights to a T-shirt manufacturer. Defendants' state, "[w]hether the licensee has been granted an exclusive license, and therefore whether the licensor has transferred the right to sue for infringement, is governed by the terms of the license." See Defendants' Memorandum of Law in Opposition to Plaintiff's Motion ("Defendants' Memorandum"), pg. 6, citing Althin CD Med., Inc. v. West Suburban Kidney Ctr., 874 F. Supp. 837, 842 (N.D. Ill. 1994). Plaintiff wholeheartedly agrees with this statement of law. Plaintiff entered into a licensing agreement for the production of T-shirts ("Licensing Agreement"). See Seider Dec., Ex. D. In the Licensing Agreement, Plaintiff explicitly retains the right to enforce its own copyrights. Id. Specifically, "[Plaintiff] shall have the right to enforce throughout the Territory, in its own name or that of Licensee, all rights to the Works and Trademarks." Id. As the terms of the Licensing Agreement dictate the rights granted, and

6

the Plaintiff retains all rights of enforcement therein, Plaintiff is not divested of standing.

## C. PLAINTIFFS ARE ENTITLED TO A PRELIMINARY INJUNCTION ENJOINING FURTHER COPYRIGHT INFRINGEMENT

### *1. Plaintiffs Are Likely to Succeed on the Merits of Their Claim of Copyright Infringement*

#### a. Plaintiff Owns Valid Copyrights in Plaintiff's Designs

Despite Defendants' attempts to cast doubt on Plaintiff's ownership in Plaintiff's Designs, Plaintiff does have valid copyrights in said designs. Plaintiff has written assignments and work-for-hire agreements that assign all copyrights in and to Plaintiff's Designs to Plaintiff. See Seider Dec., Ex. E. Defendants argue that because the artist who authored the Skull and Knife designs (which constitute two of Plaintiff's Designs) displays and sells the Skull and Knife on his personal and other websites, there is doubt as to the ownership of Plaintiff's Designs. However, the artist, Damien Friesz ("Damien"), assigned his copyright in the designs to Plaintiff. See Id. Plaintiff entered into a separate and valid oral licensing agreement with Damien that allowed Damien to continue selling and displaying the assigned designs. See Seider Dec., Ex. C, pg. 106-107.

Defendants also mischaracterize the nature of the copyright notice on Damien's website. The copyright notice is not affixed to each design on Damien's website but rather a general copyright notice appears on every page of the website. See Seider Dec. Ex. F. The notice, as it appears, is intended to give notice that the website, including the underlying code, and look and feel of the website is subject to copyright protection. By way of example only, a Google Image search for Mickey Mouse results in several images of Mickey Mouse being displayed in thumbnail version on the page, yet Google's copyright notice still appears at the bottom of the page. See Seider Dec., Ex. G. According to Defendants' argument, this would give rise to a presumption that Google actually owns the copyright to Mickey Mouse rather than Disney.

#### b. Any Errors on the Copyright Registration for Plaintiff's Design, If Any, are Innocent and Do Not Invalidate Plaintiff's Rights Therein

Defendants' argument that incorrect information on the copyright certificate invalidates Plaintiff's ownership in Plaintiff's Designs is meritless. Defendants argue that Plaintiff's incorrect date of first publication, along with Plaintiff's alleged incorrect designation of the designs as works made for hire invalidate the legitimacy of Plaintiff's copyrights. However, "innocent misstatements in a certificate of registration, unaccompanied by fraud, do not invalidate a copyright." Big Fights, Inc. v.

Ficara, 1996 WL 492988, *2 (S.D.N.Y. 1996). "Even errors as to the identity of the author or claimant are not fatal." Id. Moreover, "[w]here an employment-for-hire statement was either omitted, given in error, or stated erroneously, the Copyright Office will accept an application for supplementary registration which should include in appropriate cases a new or corrected transfer statement." *Compendium II: Compendium of Copyright Office Practices* § 1507.5(c) (1984).

If any errors exist in Plaintiff's copyright registrations, they are merely innocent errors that do not nullify Plaintiff's valid ownership in Plaintiff's designs. Plaintiff originally filed copyright registrations with incorrect dates of first publication. See Seider Dec., ¶ 3. Upon recognizing the error, Plaintiff immediately amended the application to ensure that the dates were accurate. Id. at ¶4. The dates of first publication are now consistent with the first time Plaintiff uploaded the designs to its website. Thus, the new dates of first publication reflect those dates. Plaintiff is unaware of any previous publication by Damien of any of Plaintiff's Designs prior to the date in Plaintiff's amended registration.

Accordingly, Plaintiff does indeed own valid copyrights in Plaintiff's Designs.

### c.     **Plaintiff's Designs Are Original and Validly Protected by Copyright**

Plaintiff's Designs are original and subject to valid copyright protection. The Defendants argue that Plaintiff's Designs are not protectable by copyright as they are unoriginal and depict items found in nature. Defendants' argument fails for many reasons.

First, as stated in Plaintiff's Memorandum in Support of Plaintiff's Motion ("Memorandum"), a certificate of registration from United States Register of Copyrights is *prima facie* evidence of ownership of valid copyright. 17 U.S.C.A. §410(c); Hamil America, Inc. v. GFI, 193 F.3d 92, 98 (2d Cir. 1999). Since all copyright applications must be examined by the Register of Copyrights to determine if "the material deposited constitutes copyrightable subject matter," the weight of such Register of Copyrights' determination is powerful in that the material is copyrightable. 17 U.S.C.A. §410(a). Plaintiff does indeed have certificates of registration for Plaintiff's Designs giving rise to a presumption of copyrightable subject matter.

Second, Defendants' contentions that artist renderings of eagles, skulls, roses and knives are not copyrightable is without merit and disingenuous. In O.P. Solutions, Inc. v. Intellectual Property Network, Ltd., 1999 WL 47191, * 8 (S.D.N.Y. 1999) (Judge Preska), The Court distinguished between ideas and expression for copyright purposes, as ideas are not protectable by copyright, but the expressions of those ideas are: "[t]his language sets limits on the proper subject matter of copyright

8

law, forcing a distinction between ideas and functional items (which are not protected) and creative, expressive works (which are)." Defendants attempt to paint the picture that Plaintiff is attempting to enjoin Defendants from depicting the underlying ideas of eagles, skulls, roses and knives on their merchandise. Plaintiff is simply seeking to enjoin Defendants from copying Plaintiff's Designs as creative expressions of those ideas, not the ideas altogether.

Defendants believe that because Plaintiff's Designs are expressions of things found in nature, they are not subject to copyright protection. This argument is flawed. Most notably, Defendants quote a Ninth Circuit case that states: "Nature gives us ideas of animals in their natural surroundings: an eagle with its talons extended to snatch a mouse…These ideas, first expressed by nature are the common heritage of mankind, and no artist may use copyright law to prevent others from depicting them." Satava v. Lowry, 323 F.3d 805, 813 (9th Cir. 2003). However, Defendants fail to cite the paragraph immediately thereafter:

> An artist may, however, protect the original expression he or she contributes to these ideas. An artist may vary the pose, attitude, gesture, muscle structure, facial expression, coat, or texture of animal. An artist may vary the background, lighting, or perspective. Such variations, if original, may earn copyright protection.

Id.

Moreover, "the essence of copyright law is to protect specific expressions of ideas, even common ones like eagles and flags." Gonzales v. Kid Zone, LTD., 2001 WL 1329300, *1 (N.D. Ill. 2001) (District Court found that defendant willfully infringed on plaintiff's original tattoo designs depicting eagles, flags, and the Virgin Mary). Plaintiff's Designs are undoubtedly original expressions of ideas that are found in nature. Accordingly, such expressions are subject to valid copyright protection.[1]

Third, Defendant cannot in good faith argue that such designs are not copyrightable when they have built their entire enterprise around similar practices. Defendants' merchandise has countless depictions of eagles, skulls, roses, snakes, and other items found in nature. Specifically, when a user right clicks on a picture of a t-shirt on Defendants' website, *<christianaudigier.com>*, to copy the picture, a copyright notice appears stating that the image is copyright protected. See Seider Dec., Ex. H. Defendants cannot on one hand argue that such designs are not subject to copyright protection, and

---

[1] Despite Defendants' contentions, Plaintiff's copyrighted eagle and Harley Davidson's eagle logo are only similar in that they are both eagles and have the requisite eagle anatomy. Beyond that, these particular works bear no resemblance whatsoever.

on the other hand, seek to protect their own designs which are of the same or similar subject matter. Defendants should be estopped from arguing that such images are not subject to valid copyright.

For these reasons, Plaintiff's designs are original expressions and are entitled to copyright protection.[2]

### d. Defendants' Designs Are Uncannily Similar to Plaintiff's Designs

Defendants claim that Defendants' infringing shirts do not contain designs that are substantially similar to Plaintiff's Designs. This Court recited, "[i]n determining whether the copying is unlawful and hence actionable, the critical question is whether there is so-called "substantial similarity" between the defendant's work and the protectable elements of the plaintiff's work." O.P. Solutions, Inc.v., 1999 WL 47191 at *4 (Judge Preska). Courts use the "lay observer" test to determine substantial similarity in which the "Court considers whether the average lay observer would recognize the challenged material as having been copied from the copyrighted work." Flaherty v. Filardi, 388 F.Supp.2d 274, 287 (S.D.N.Y. 2005). In this instance, any lay observer would recognize that the designs on Defendants' infringing shirts are undoubtedly substantially similar to Plaintiff's Designs.

#### i. Eagle Design

Mere color and size variations in a copyrighted work does not absolve a party of infringing another's copyright. Gund, Inc. v. SKM Enterprises, Inc., 2001 WL 125366, *4 (S.D.N.Y. 2001). The eagle design on Defendants' infringing shirts is substantially an exact copy of Plaintiff's eagle. See Seider Dec., Ex. I. They both are positioned the exact same way. They both have the same number of feathers. They both have the same exact proportions. They both have the same exact look on their respective faces. They both contain the same shading schemes. Everything about the eagles is similar.

#### ii. Knife and Rose Design

The knife and rose design on Defendants' infringing shirts is also substantially an exact copy of Plaintiff's knife and rose design. See Seider Dec., Ex. J. They both contain the same angles and

---

[2] To clarify a misstatement in Defendants' Memorandum on page 12, Plaintiff never admitted that it took "no efforts to determine whether those designs were original creations by the artists, or copies or derivative of other works." Conversely, Plaintiff explains the process of approving designs to be uploaded and sold on the website whereby each work is reviewed. See Seider Dec., Ex. C, pgs. 42-46. Furthermore, Plaintiff explained that they work with many tattoo artists each with their own unique style and Plaintiff can easily recognize whether a submitted design is an original of that artist.

proportions. They both contain the same swirl design on the blade. They both contain the same rose design in the middle of the knife with the same number of pedals. They both contain the same shape on the handle with identical swirl patterns on the bottom of the handle. They both contain the same serrated edges in the same proportion. Defendant cannot in good faith argue that because the Defendants printed two of Plaintiff's knife and rose design in a criss-cross manner, they are not substantially similar. They are essentially the exact same design.

### iii.   Skull Design

Similar to the knife and rose, the skull design on Defendants' infringing shirts is also substantially an exact copy of Plaintiff's skull design. See Seider Dec., Ex. K. They both contain the same swirl design on the chin, under the nose, and on the stop of the skull. They both contain the same webbing feature on the side of the skull. The both contain the same number of teeth, which is not the same number of teeth in a real adult skeleton. Both of the respective skulls mouths are opened to the exact same angle and proportion. They both contain the same shading. They both contain substantially the same color scheme. In fact, the only difference appears to be the eyes, in which, upon further examination, Defendant eliminates the rose from the top of Plaintiff's skull, and replaces the eyes with Plaintiff's rose from Plaintiff's knife and rose design. See Seider Dec., Ex. L.

### e.   Plaintiffs Will Suffer Irreparable Harm In the Absence of a Preliminary Injunction

Plaintiff will indeed suffer irreparable harm in the absence of a preliminary injunction. Notwithstanding the presumption of irreparable harm in cases of copyright infringement when a party makes a showing of a likelihood of success on the merits, as Plaintiff has done here, and in addition to all of the reasons previously set forth, Plaintiff also has suffered irreparable harm because they cannot exploit their own copyrights on t-shirts for fear of being labeled plagiarists. See Seider Dec., Ex. C Bollt Deposition, pg. 78:9 ("The eagle is an image we had every intention of using on T-shirts. And we don't want to be accused of plagiarism, so I'm not sure what's going to happen."). This, in conjunction with Plaintiff's previous arguments, shows that Plaintiff will suffer irreparable harm without an injunction.

### f.   The Balance of Hardships Weighs Heavily in Plaintiffs' Favor

Defendants argue that the balance of the hardships weighs in Defendants' favor because they will lose a huge part of their business. Plaintiff's Memorandum rebuffs such an argument: "Where the only hardship that the defendant will suffer is lost profits from an activity which has been shown likely

to be infringing, such an argument in defense merits little equitable consideration." Memorandum, pg. 19; citing Concrete Mach. Co. v. Classic Lawn Ornaments, Inc., 843 F.2d 600, 612 (1st Cir. 1988). For brevity's sake, we direct the Court to the Memorandum, Sec. I, D as it sets forth a multitude of hardships that weigh overwhelmingly in Plaintiff's favor. Whatever hardships Defendants face as a result of their infringement of Plaintiff's Designs is of their own doing.

### D. ANY SECURITY REQUIRED TO BE POSTED BY PLAINTIFF FOR THE ISSUANCE OF A PRELIMINARY INJUNCTION SHOULD BE MINIMAL

Plaintiff should be required to post a minimal bond, if any, if Plaintiff's preliminary injunction issues. Defendants argue that they will suffer devastating and irreparable harm with the grant of a preliminary injunction. Such an argument is without merit.

The District Courts are granted wide discretion in setting the amount of security a party must post for a preliminary injunction to issue. Doctor's Associates, Inc. v. Stuart, 85 F.3d 975, 985 (2nd Cir. 1996). Because "the amount of any bond to be given upon the issuance of a preliminary injunction rests within the sound discretion of the trial court, the district court may dispense with the filing of a bond." Clarkson Co., Ltd. v. Shaheen, 544 F.2d 624, 632 (2nd Cir. 1976). When a Defendant continues to produce new items with infringing designs after a suit is filed and after the commencement of a plaintiff's request for preliminary injunction, such acts should militate against a high bond. Budish v. Gordon, 784 F.Supp. 1320, 1338 (N.D. Ohio 1992).

> The Defendants continued with the process of preparing a second edition of their [allegedly infringing] book (Life Savings II) even after this suit was filed, and ordered 100,000 copies of their book to be printed. Life Savings II was placed on the market just a few weeks before the commencement of the preliminary injunction hearing in this case. The Defendants having done this, already knowing that Plaintiff was seeking injunctive relief against their first book, they shall not be heard to complain that they may lose the profits from the sale of those 100,000 books.

Id.

In this matter, Defendants request that a $5,000,000 bond be posted by Plaintiff in the even the Court orders a preliminary injunction. Defendants seek such a high bond as they believe an injunction will damage their reputation and cost them millions in lost profits. See July 18, 2008 Declaration of Henry R. Mandell.

Plaintiff objects to such a large bond on many grounds. First, any damage to Defendants' reputation and resulting lost profits is of their own doing. They do not deny accessing Plaintiff's website and downloading Plaintiff's Designs and they make a disingenuous argument as to why

12

their use of Plaintiff's Designs is not infringing. Second, despite being on notice of Plaintiff's copyrights in Plaintiff's Designs and the commencement of this litigation, Defendants continue to print and distribute new and different styles with Plaintiff's Designs and other designs registered to Plaintiff. After the filing of this suit, and Plaintiff's request for a preliminary injunction, Defendants have distributed at least three new styles of shirts with designs in which Plaintiff holds copyrights. See Seider Dec., Ex. M, N, and O. Specifically, Plaintiff's registered "White Bengal Tiger" design appears to be directly copied on Defendants' T-shirts and was released after the commencement of this action. See Seider Dec., Ex. O. Such willful infringing acts should not be rewarded by requiring Plaintiff to post a large bond. Third, Henry R. Mandell, in his declaration takes a tremendous leap of faith in creating the $5,000,000 figure. None of the numbers offered by Mr. Mandell even remotely evidence that damage to Defendants will be close to $5,000,000. Fourth, given Plaintiff's overwhelming likelihood of success on the merits, as presented above, and the Court's wide discretion in setting the amount of security, the interest of justice compels the Court to set a minimal bond, if at all.

### III.   CONCLUSION

For the foregoing reasons, Plaintiff's requested preliminary injunction should be granted in its entirety.

Respectfully Submitted,

_____
Mark D. Miller, Esq. (7450)

13